FILED

2017 DEC -6 PM 4: 29

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) ) | CASE NO. 17 CR 507 |
| v. | ) ) | JUDGE JUDGE PEARSON |
| CHARLES DAVID SNYDER, | ) ) | Title 18, United States Code, §§ 2, 664, Title 26, United States Code, § 7202 |
| Defendant. | ) | |

The Grand Jury charges:

I. GENERAL ALLEGATIONS

At all times relevant to this Indictment, except where otherwise noted:

A. Defendant and Entities

1. Defendant CHARLES DAVID SNYDER was a resident of Lakewood, Ohio.

2. Attevo, Inc. was headquartered in Cleveland, Ohio, and incorporated in the State of Ohio on or about August 17, 2005. Attevo was in the business of providing technology consulting services. SNYDER was Attevo's chairman, president, and chief executive officer. On or about May 24, 2012, Attevo merged with Superior Technology Partners, LLC, to form Averrock, Inc. On or about July 31, 2012, Averrock changed its name to Cirric, Inc. Although his percentage ownership fluctuated over time, SNYDER always held a majority of Cirric's

outstanding shares. Cirric continued to represent itself as Attevo to its clients and continued to operate in the technology-consulting sector.

3. Ruralogic, Inc. (together with Attevo, the "Companies") was headquartered in Bryan, Ohio, and incorporated in the State of Ohio on or about June 1, 2010. SNYDER was Ruralogic's Chairman of the Board and held approximately 70% of Ruralogic's outstanding shares. SNYDER was not directly involved with Ruralogic's day-to-day operations. Rather, J.B. ran Ruralogic's day-to-day operations. Ruralogic's corporate structure was not affected by the stock merger that created Cirric.

4. As Attevo's chairman, president, and chief executive officer, SNYDER was ultimately responsible for, among other functions, the finances, including maintaining the payroll records and payroll bank account, preparing payroll checks, preparing and filing the employment tax returns, and paying the employment taxes. While SNYDER delegated these duties to employees, SNYDER signed off on all of the related financial documents, reports, and payments.

B. Bank Accounts

5. SNYDER opened and caused to be opened the Attevo commercial checking account ending in numbers x0845 at Chase Bank in or around March 2005. This account was Attevo's primary operating account and listed SNYDER and J.B., the chief financial officer of Attevo, as signatories on the account.

6. SNYDER opened and caused to be opened the Cirric business checking account ending in numbers x3785 at PNC in or around September 2012. The account signatories were SNYDER and Attevo employees L.P. and J.B.

2

7. SNYDER opened and caused to be opened an account in the name of Vista Capital at Key Bank in an account ending in numbers x1227, which held SNYDER's personal assets.

8. SNYDER's wife, M.S., maintained a personal account at RBS Citizens Bank in an account ending in x0701.

C. Internal Revenue Service Laws and Obligations

9. Attevo's employment taxes included Federal Insurance Contributions Act ("FICA") taxes and income taxes that Attevo was required to withhold from the taxable wages of their employees and FICA excise taxes Attevo was required to pay on those taxable wages.

10. Under the internal revenue laws, an employer was required on a quarterly basis to report and pay to the IRS the FICA taxes owing with respect to the taxable wages paid by the employer (also known as social security and Medicare taxes) and federal income taxes required to be withheld from those wages.

11. The FICA taxes consisted of an "employees' portion," required to be withheld from the employees' wages and an "employer's portion," which the FICA imposed as an excise tax on the employer. Employers were required to report their employment tax obligations on an Employer's Quarterly Federal Tax Return, Form 941. The returns were due by the last day of the month following the end of the calendar quarter.

D. Attevo's Payment of Employment Taxes

12. In Attevo's initial years, it contracted with Group Management Services ("GMS"), a professional employer organization. All of Attevo's employees worked for GMS, with GMS handling all payroll functions. Later, in or around 2006 and 2007, Attevo began to

experience cash flow problems. As a result, Attevo terminated GMS and brought all payroll functions in-house. At SNYDER's direction, Attevo employees prepared financial records and schedules, quarterly/annual returns, and reports for Attevo. Specifically, Attevo employees prepared Forms 941 on a quarterly basis, provided the completed Forms for SNYDER to sign, and mailed the Forms to the IRS. SNYDER signed all of the Forms 941 except the Form 941 for the last quarter of 2012.

13. SNYDER had signature authority over Attevo's Chase Bank account in which employee payroll checks were drawn and business expenses were paid, including Attevo's employment tax remittances. SNYDER signed Attevo checks payable to the IRS for employment tax payments and approved wire transfers to the IRS for payment.

14. Attevo employees performed daily bank reconciliations of Attevo's Chase bank account. The Attevo employees reviewed the account for outstanding checks, pending checks, and available balance and met to create a "hot list" every Friday. The "hot list" ranked Attevo's payables in order of importance according to SNYDER. Attevo's medical and dental insurance provider was typically the first on the list. Generally, Attevo's credit cards with Chase Bank, vehicle leases from Snyder Chevrolet, and American Express were next on the "hot list"; the IRS was never on the "hot list." SNYDER decided who to pay, when to pay, and how much to pay for all of Attevo's expenses.

15. On a weekly basis, Attevo employees provided SNYDER with updated outstanding tax liabilities owed to the IRS. SNYDER directed Attevo employees when to make payments to the IRS. SNYDER decided whether Attevo would pay its quarterly employment

4

taxes to the IRS. Attevo did not maintain a separate holding account for the employee's portion of employment taxes.

16. On or about October 28, 2011, SNYDER, on behalf of Attevo, and the IRS agreed to a monthly payment plan of approximately $48,350 per month to repay all of Attevo's outstanding employment tax liabilities. Attevo made ten payments under this plan between October 28, 2011, and July 30, 2012, totaling approximately $483,500, all of which was applied toward employment tax liabilities for the 4th quarter of 2008. Attevo made no further payments under the payment plan.

17. SNYDER caused Attevo's Forms 941 for the 1st quarter of 2009 through the 4th quarter of 2012 to be filed, but not all quarterly deposits, as required, were made. SNYDER made partial payments for the 1st quarter of 2010 through the 3rd quarter of 2010. SNYDER made full payments for the 4th quarter of 2010 through the 4th quarter of 2011 after IRS civil tax representatives contacted SNYDER in September 2010. Additionally, during that time, SNYDER made monthly payments, as stated above in paragraph 16, in order to repay outstanding liabilities. SNYDER made minimal payments for the 1st quarter of 2012 through the 4th quarter of 2012.

18. SNYDER failed to pay over to the IRS approximately $328,355.73 of the employees' portion of employment taxes owed from the 1st quarter of 2010 through the 3rd quarter of 2010. SNYDER failed to pay over to the IRS approximately $530,778.06 of employees' portion of employment taxes owed from the 1st quarter of 2012 through the 4th quarter of 2012.

E.  Attevo 401(k) Retirement Plan

19.  SNYDER created a 401(k) and profit sharing plan ("Attevo 401(k) Retirement Plan" or "Plan") for Attevo employees on June 15, 2009. On October 14, 2010, SNYDER added Ruralogic as a participating employer for the Plan. The Plan was an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974 (ERISA). The Plan provided retirement benefits to Attevo and Ruralogic employees and was funded through employee payroll deferrals.

20.  SNYDER had sole responsibility for authorizing remittances to the Plan relating to Attevo's employees. J.B. had sole responsibility for authorizing remittances to the Plan from Ruralogic's bank account, but this only happened twice (two payments of $2,331.60 each on December 2, 2011) between October 14, 2010, and December 19, 2012. All other remittances for both Attevo and Ruralogic Plan participants during that time came from Attevo's Chase bank account at SNYDER's direction.

21.  Between on or about July 31, 2010, and December 19, 2012, SNYDER failed to remit and caused the failure to remit approximately $130,415.75 in Plan participant contributions and loan repayments withheld from Attevo and Ruralogic employee wages.

F.  SNYDER's Income and Expenditures

In or around the time periods charged in this Indictment, SNYDER had income and expenses that included, but was not limited to:

22.  From in or around October 2009 to in or around February 2012, SNYDER paid approximately $510,000 for the rental of two houses, his personal residence in Lakewood, Ohio, and his vacation home in Chautauqua County, New York.

23. From in or around January 2009 to in or around August 2013, SNYDER caused numerous cash advances to Attevo's credit card and then caused approximately $82,327 in cash to be deposited into his Vista Capital account and $182,988.40 in cash to be deposited into M.S.'s RBS bank account. M.S. did not work for Attevo.

24. From on or about September 10, 2011, to on or about October 1, 2012, SNYDER used Attevo's American Express card for a total of approximately $17,804.66 in personal expenses, including purchases at women's clothing stores, beauty supplies, resort travel, groceries, and pool/spa renovations.

25. According to documents submitted to the IRS, SNYDER earned income from Attevo in the amounts of $268,488 in 2009, $390,237 in 2010, and $191,407 in 2011.

## II. STATUTORY VIOLATIONS

### COUNTS 1-7
(Willful Failure to Collect, Account for, or Pay Over Tax, 26 U.S.C. § 7202, 18 U.S.C. § 2)

The Grand Jury further charges:

26. The allegations contained in paragraphs 1 through 18 and 22 through 25 are re-alleged and incorporated as though fully set forth herein.

27. On or about the dates set forth below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant CHARLES DAVID SNYDER, who, for the calendar quarters ending with the approximate dates set forth below, was required, for and on behalf of Attevo, to collect, account for, and pay over, federal income taxes and Federal Insurance Contributions Act ("FICA") taxes that Attevo was required to and did withhold from the total taxable wages of Attevo's employees in the combined sums set forth below, did willfully fail to truthfully account for and pay over to the Internal Revenue Service said withheld federal income

taxes and FICA taxes due and owing to the United States on behalf of Attevo, and its employees, for each of the quarters listed below, in the approximate amounts listed below, with each calendar quarter constituting a separate count of this Indictment:

| Count | On or About Date of Offense | Calendar Quarter Ending | Approximate Unpaid withheld income taxes and FICA taxes |
|---|---|---|---|
| 1 | April 30, 2010 | March 2010 | $207,329.76 |
| 2 | July 31, 2010 | June 2010 | $4,814.67 |
| 3 | October 31, 2010 | September 2010 | $116,211.30 |
| 4 | April 30, 2012 | March 2012 | $178,488.78 |
| 5 | July 31, 2012 | June 2012 | $181,739.47 |
| 6 | October 31, 2012 | September 2012 | $132,365.55 |
| 7 | January 31, 2013 | December 2012 | $38,184.26 |

All in violation of Title 26, United States Code, Section 7202, and Title 18, United States Code, Section 2.

## COUNT 8
(Embezzlement from an Employee Benefit Plan, 18 U.S.C. § 664, 2)

The Grand Jury further charges:

28. The allegations contained in paragraphs 1 through 6 and 19 through 21 are re-alleged and incorporated as though fully set forth herein.

29. Between on or about July 31, 2010, and December 19, 2012, in the Northern District of Ohio and elsewhere, Defendant CHARLES DAVID SNYDER did knowingly embezzle, steal and unlawfully and willfully abstract and convert to his own use and the use of another, the moneys, funds, credits, property, and other assets of an employee pension benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, and of a fund connected with such plan, to wit: approximately $130,415.75

belonging to the Attevo 401(k) Retirement Plan, in violation of Title 18, United States Code, Sections 664 and 2.

A TRUE BILL.

Original document -- Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.