PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | CASE NO. 1:17CR507 |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CHARLES DAVID SNYDER, | ) | |
| | ) | **MEMORANDUM OF OPINION &** |
| Defendant. | ) | **ORDER** |
| | ) | [Resolving ECF Nos. 20, 21, 22, & 32] |

Pending before the Court are four motions, three from Defendant Charles David Snyder and one from the Government: (1) Defendant's Motion to Compel (ECF No. 20); (2) Defendant's Motion to Dismiss the Indictment (ECF No. 21); (3) Defendant's Motion to Disclose Grand Jury Transcripts (ECF No. 22); and (4) the Government's Motion to Quash Subpoenas Issued to the IRS and DOL (ECF No. 32). The Government has responded to all three of Defendant's motions.[1] *See* ECF Nos. 25, 26, & 27. Defendant has responded to the Government's motion. ECF No. 35. Defendant has filed a reply to his motion to disclose grand jury transcripts. ECF No. 34. After receiving new evidence through discovery, Defendant has filed a supplemental brief to his motions to disclose grand jury transcript and to dismiss indictment. ECF No. 44. In response to Defendant's supplement, the Government has filed a

---

[1] All three responses are sealed.

supplemental brief of its own. ECF No. 49. For the reasons that follow, Defendant's motions are denied, and the Government's motion is granted in part.

### I. Background

#### A. Indictment

The Government has indicted Defendant on seven counts of Willful Failure to Collect, Account for, or Pay Over Taxes, 26 U.S.C. § 7202, 18 U.S.C. § 2, and one count of Embezzlement from an Employee Benefit Plan, 18 U.S.C. §§ 664, 2. ECF No. 1. The indictment alleges Snyder embezzled approximately $130,416.75 from his company's 401(k) retirement plan between July 31, 2010 and December 19, 2012. *Id.* at PageID #: 8. The Department of Labor filed an ERISA suit against Snyder and others on November 7, 2013. *Perez v. Snyder*, 1:13CV2474 (N.D.Ohio) (Boyko, J.). The parties resolved the lawsuit by entering into a consent judgment. ECF No. 33 of 1:13CV2474.

Defendant was chairman, president, and chief executive officer of Attevo, Inc., a technology consulting services corporation. ECF No. 1 at PageID #: 1. Defendant is alleged to have failed to pay taxes Attevo owed and embezzled money from Attevo's 401(k) retirement plan.

#### B. Discovery

For discovery in the present case, the Government provided over 41,000 pages of documents under Criminal Rule 16. ECF No. 25 at PageID #: 171. After the Government made this production, Defendant requested 12 categories of materials he claimed the Government did not produce. ECF No. 25-2. The list is as follows:

2

(1:17CR507)

> 1. Copies of all subpoenas issued;
> 2. Copies of all grand jury testimony;
> 3. Copies of all Memorandums of Interviews (MOI's);
> 4. Entire Attevo IRS "Archive History Transcript" not just IRS Revenue Officer Evelyn Terry;
> 5. IRS "Archive History Transcript" for all related entities, including, but not limited to, Cirric, Ruralogic, Avverrock and Superior Tech Partners;
> 6. IRS "Archive History Transcript" for C. David Snyder, including all trust fund penalty investigation materials;
> 7. IRS "Archive History Transcript" for Joseph Burmester, including all trust fund penalty investigation materials;
> 8. Copies of all DOL notes and internal memoranda related to its investigation of the Attevo/Ruralogic 401(k) Plan;
> 9. Copies of all memoranda related to Attevo/Ruralogic 401(k) Plan employee withholdings, deposits and dates corresponding to same;
> 10. Copies of all notes and recordings related to DOL civil suit styled as *Thomas E. Perez, Sec. of Labor v. Charles David Snyder, et al*, Case No. 13-cv-2474;
> 11. Copies of all IRS memoranda and notes related to the transfer of Form 941 designated payments through the EFTPS online payment system; and
> 12. Copies of all documents obtained from payroll companies utilized by Attevo and Ruralogic.

*Id.* at PageID #: 191. After receiving the request, the Government asked Defendant for authority to support the request. *Id.* at PageID #: 190-91. Defendant complied with this demand, and the Government provided further response. *Id.* at PageID #: 188-90. In its final response, the Government explained that it would not produce documents related to requests 1-3, because it believed it had no authority to do so, and that requests 4-12 only applied to documents held by the prosecution team, not the entire federal government. *Id.* at PageID #: 188.

**C. Grand Jury Testimony**

Defendant has requested grand jury transcripts on the theory that "some form of conduct must have occurred before the Grand Jury in order for the Grand Jury to find that [Defendant]

3

(1:17CR507)

willfully failed to pay Attevo's payroll taxes for the first and third quarters of 2010." ECF No. 22 at PageID #: 151.

On November 5, 2010, Defendant and Joseph Burmester wrote a letter to Evelyn Terry, a revenue officer at the IRS. ECF No. 27-1. In that letter, Defendant acknowledged that a payment Attevo had made could "be credited to a prior quarter," not the period in which it made the payment. *Id.* at PageID #: 250.

### D. Subpoenas

Defendant attempted to serve three subpoenas just before the May 10, 2018 Final Pretrial Conference. He served IRS employee Adele Heard and former IRS employee Evelyn Terry and attempted to serve a subpoena on Special Agent Jeffrey Buttolph of the Department of Labor. ECF Nos. 36, 38, and 45. For each subpoena, Defendant requested that the individual appear in Court on May 10, 2018 to provide testimony and produce documents. ECF No. 32 at PageID #: 269-71.

## II. Discussion

### A. Motion to Compel Discovery

#### 1. Requests 4-12

The parties' dispute as to these categories centers on possession of the documents. Defendant claims that "the Government is in possession of said records and is refusing to disclose them ... ." ECF No. 20 at PageID #: 100-01. In response, the Government argues that the prosecution team does not have any records that fall within these categories that it has not already produced to Defendant. ECF No. 25 at PageID #: 176-77.

4

(1:17CR507)

*United States v. Stein*, 424 F.Supp.2d 720, 723 (S.D.N.Y. 2006) holds that a criminal defendant is not entitled to IRS civil audit files in the possession of governmental actors outside the prosecution team. Indeed, "the prosecution is only obliged to disclose information known to other's acting on the government's behalf in a particular case." *Id*. (quotation omitted).

In this case, the Government has stated that the prosecution team does not have documents that fit within categories 4-12. Defendant has not shown anything to prove otherwise. Based on this, the Government has met its obligations as to these categories based on *Stein*.

As to Request 11, the Government indicated at the Final Pretrial Conference, that it was in the process of obtaining records from the IRS and produce responsive materials. As indicated during the Final Pretrial, the Court will not interject itself into this exchange.

### 2. Request 3

The government has agreed to provide any interview memoranda in its possession. ECF No. 25 at PageID #: 177. It indicates, however, that it does not believe it has any in its possession. *Id*.

Because the Government has acknowledged its duty to provide such materials, if any, this part of the motion is moot.

### 3. Requests 1 & 2

Defendant has raised a separate motion on this topic, so the Court will address this issue in its analysis of that motion.

(1:17CR507)

### B. Motion to Dismiss the Indictment

#### 1. Counts 1 & 3: Outrageous Government Conduct

Defendant argues "IRS agents manufactured" Counts 1 and 3 by "fail[ing] to apply all of the $863,815.30 in tax deposits that Attevo designated and/or directed the IRS to apply towards the federal tax obligations it owed for the first and third quarters of 2010." ECF No. 21 at PageID #: 109. In response, the Government argues that Defendant's argument presents a factual dispute, not outrageous government conduct. ECF No. 26 at PageID #: 210.

In *United States v. Russell*, 411 U.S. 423, 431-32 (1973), the United States Supreme Court held, *in dicta*, there may be instances when the "conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." The Sixth Circuit has not explicitly adopted the outrageous government conduct defense. *United States v. Miller*, 696 F.App'x. 696, 699 (6th Cir. 2017) ("regardless of the propriety of the government action in this case, the Sixth Circuit has not adopted the outrageous government conduct defense.") (citation omitted).

Even assuming that outrageous conduct is a viable defense in the Sixth Circuit, Defendant has not raised sufficient facts to succeed on an outrageous conduct theory. Defendant has not argued that the IRS failed to credit Attevo for tax deposits it made. Rather, he argues that the IRS failed to credit those deposits in the period Defendant desired to avoid prosecution. As the Government asserts, this is a factual dispute as to how those payments should be applied, especially as the Government's final briefing on the matter indicates that Attevo made three

6

(1:17CR507)

deposits before of after the second quarter of 2010, and therefore, the IRS was permitted to move those payments. ECF No. 49 at PageID #: 395.

Defendant's outrageous conduct claim fails.

### 2. Selective Prosecution

Next, Defendant argues that the Government is engaging in selective prosecution by prosecuting him on the basis of his wealth, political affiliations, and socioeconomic status. ECF No. 21 at PageID #: 113-18.

> The Sixth Circuit has held that a defendant making a selective prosecution claim bears the heavy burden of establishing, *at least prima facie*, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, *and* (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights.

*United States v. Hazel*, 696 F.2d 473, 474 (6th Cir. 1983) (quotation omitted) (emphasis in original). The decision to prosecute is presumed proper "absent a substantial showing to the contrary." *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997). A movant is entitled to a hearing on the matter "only when the motion alleges sufficient *facts* to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." *Hazel*, 696 F.2d at 475 (quotation omitted).

Defendant fails to make out a *prima facie* case of selective prosecution. He does not meet the first *Hazel* prong, because he has not shown a comparator.[2] See *United States v.*

---

[2] During the Final Pretrial Conference, Defendant suggested that Attevo vice

(continued...)

7

(1:17CR507)

*Wortman*, 765 F.2d 147 (table), 1985 WL 13325, at *2 (6th Cir. May 29, 1985) (affirming dismissal of selective prosecution claim when defendant did not provide evidence that he "had been singled out and that the government's decision to prosecute was made in bad faith.").

Also, Defendant has not provided a sufficient factual basis to meet the second *Hazel* prong. Defendant has not made allegations sufficient to show that Defendant was prosecuted because of his wealth. Defendant relies on the Government's news release following his indictment on the theory that it listed assets he owned, but one article is insufficient to demonstrate animus. *Cf. United States v. Williams*, 684 F.App'x. 767, 778 (11th Cir. 2017) (holding that one attorney's comment about fact that arrestees were doctors who flew their own planes did not demonstrate discriminatory intent, because the statement was the only piece of evidence and the statement only alluded to wealth). The Government points out, lavish spending like that referenced in the news release is relevant in a prosecution over failure to pay taxes.³ *See United States v. Blanchard*, 618 F.3d 562, 569-70 (6th Cir. 2010) (holding that evidence "that a

---

²(...continued)
president and chief financial officer Joseph Burmester is a comparator. The Government responded by explaining that Burmester did not have the same control over Attevo's finances that Defendant did. The Government posited that evidence shows that Burmester only made one payment to the IRS on behalf of Attevo, whereas as Defendant made many. And, it asserted that evidence also shows that Defendant scolded Burmester for making that payment without his approval. Therefore, Burmester does not qualify as a comparator.

³ Defendant also makes the argument that, in addition to wealth, he is being prosecuted due to his socioeconomic status. He has not, however, differentiated this argument from his wealth argument. So, Defendant's socioeconomic status argument fails for the same reasons his wealth argument fails.

8

(1:17CR507)

defendant has made discretionary purchases in lieu of meeting his tax obligations ... is probative of his guilt.").

Defendant also has not shown the Government is prosecuting him due to his political affiliations. Defendant has offered evidence that he has connections to Democratic politicians (ECF No. 21 at PageID #: 117-18), but he has not shown that his prosecution was motivated by that. A defendant must show political animus on the part of someone involved in the decision to prosecute the case. *See Hastings*, 126 F.3d at 314.

Because Defendant has not met either *Hazel* prong, his selective prosecution argument fails.

### 3. Statute of Limitations

Defendant's final argument in his motion to dismiss focuses on Count 8 of his indictment, a violation of 18 U.S.C. § 664. He argues that the statute of limitations bars "all/or a vast majority of the conduct in Count 8 of the Indictment". ECF No. 21 at PageID # 118. In its memorandum in opposition to Defendant's motion, the Government indicated that only one instance of embezzlement, totaling approximately $3,722.28, occurred outside of the agreed statute of limitations period in this case. ECF No. 26 at PageID #: 213-14.

Title 18, Section 3282 sets a five-year statute of limitations for non-capital offenses. One exception to this rule is for continuing offenses. The Supreme Court has held that "the doctrine of continuing offenses should be applied in only limited circumstances." *Toussie v. United States*, 397 U.S. 112, 115 (1970). A finding of a continuing offense is improper "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of

9

(1:17CR507)

the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id*.

The Sixth Circuit has not yet ruled whether a violation of 18 U.S.C. § 664 constitutes a continuing offense. Other circuits have ruled that 18 U.S.C. § 661, which addresses embezzlement of public monies, may be charged as a continuing offense. *See, e.g.*, *United States v. Smith*, 373 F.3d 561, 564 (4th Cir. 2004) (holding that "the nature of embezzlement is such that Congress must have intended that, in some circumstances, it be treated in § 641 as a continuing offense."). Some district courts have ruled that § 664 violations are not continuing offenses. *See, e.g. United States v. Duhamel*, 770 F.Supp.2d 414, 416 (D. Me. 2011) (holding that § 664 does not constitute a continuing offense, in part, because "each alleged movement of money" from the fund in the case "was based on a unique set of actions undertaken by Defendant on different dates.").

Here, Defendant's crime as alleged is not a continuing violation. While it occurred over time, it also required him to exercise restraint or to affirmatively act. In other words, the crime was not inherently continuing. It continued only if Defendant persisted. *See United States v. Williams*, No. GJH-171-19, 2017 WL 5657734, at *4 (D.Md. Nov. 29, 2017) (holding that § 664 is not a continuing offense, because a defendant has to engage in "affirmative acts" for each instance of embezzlement under the statute).

(1:17CR507)

The indictment alleges that "between *on or about* July 31, 2010 and December 19, 2012,"[4] Defendant embezzled $130,415.75. ECF No. 1 at PageID #: 8. At issue is the Attevo embezzlement alleged to have occurred on August 2, 2010, which is outside of the statute of limitations. The Government acknowledges that the August 2, 2010 violation is only proper if Count 8 is a continuing offense and that the next alleged violation did not occur until December 1, 2011. Having found that the crime alleged in Count 8 is not continuing, the Court dismisses the part of Count 8 alleged to have occurred prior to the statute of limitations. The parties shall consult and inform the Court by noon on May 23, 2018, if they can agree on how the Indictment can be conformed to the ruling or if the Government will pursue a superseding Indictment.

**C. Motion to Disclose Grand Jury Transcripts**

Defendant argues that the grand jury transcripts will reveal misconduct on the part of the Government. ECF No. 22 at PageID #: 151-53. Specifically, he contends that Attevo timely paid its taxes for the first and third quarters of 2010, but the Government did not credit those payments. *Id.* at PageID #: 150.

---

[4] Sixth Circuit Pattern Jury Instruction 2.04 explains that when the Indictment charges that the crimes happened "on or about" certain dates, "[t]he Government does not have to prove that the crimes happened on those exact dates. But the Government must prove that the crimes happened reasonably close to those dates."

(1:17CR507)

The Government rejects this argument. It points out that Snyder ratified the transfer of some of his tax payments to periods outside of the first and third quarter of 2010. ECF No. 27 at PageID #: 243.[5]

In his reply brief, Defendant disputes the Government's characterization of the evidence. ECF No. 34. He argues that he did not expressly ratify the transfer of tax credits and that the IRS archive history supports that. *Id*. He also contends that the IRS transferred Attevo's tax payments to a tax quarter when Defendant and Attevo was not dealing with the IRS. *Id*.

Rule 6(e)(3)(E)(ii) of the Federal Rules of Criminal Procedure provides that "a court may authorize disclosure ... of a grand jury matter ... at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Grand jury proceedings are usually secret, and a defendant bears the burden of showing a particularized need that outweighs the need for secrecy. *United States v. Short*, 671 F.2d 178, 186 (6th Cir. 1982) ("[t]he discretion of the trial judge and the requirement of a showing of 'particularized need' still govern motions for pretrial disclosure of grand jury transcripts.").

Defendant has not shown particularized need. Defendant claims that the IRS was applying Attevo's tax payments to different quarters than the quarters Attevo intended when it made the payments, but, if this is true, Defendant does not need grand jury transcripts to prove that. Although Defendant raises a factual dispute, he does not provide a link to show how grand

---

[5] In its supplemental brief, the Government clarifies that the IRS tax examiner credited three payments to the second quarter of 2010. It contends that the examiner had the authority to do so based on the timing of Attevo's tax payments." ECF No. 49 at PageID #: 395.

12

(1:17CR507)

jury transcripts would prove necessary to resolve this dispute, especially as he can rely on documentary support to advance his theory that the IRS improperly credited Attevo's tax payments.

In a supplemental brief, Defendant argues that May 2018 email communications between IRS Special Agent Anthony Pizzola and IRS Investigative Analyst Chris O'Hagan shows that the IRS "unilaterally made the decision to move tax deposits that Attevo designated to be applied to its employment taxes for the first and third quarters of 2010." ECF No. 44 at PageID #: 363. Defendant reasons "it is highly likely that the Government and/or a Government witness made ... false representations to the Grand Jury ... ." *Id.* Defendant's new argument is more of the same: it fails to show particularized need. It bolsters his claim that there is a factual dispute as to whether the tax payments were credited properly, but it does not show a need for disclosure of the grand jury transcripts.[6] In fact, the Government has asserted that the tax examiner handling the matter moved some of Attevo's tax payments, because Attevo did not pay them in the period for which it wanted to credit the payment. The tax examiner moved the payments "to save and/or reduce Attevo's penalties and interest on its outstanding tax liability." ECF No. 49 at PageID #: 395.

Therefore, the Court will not order the disclosure of grand jury transcripts.

---

[6] Even assuming Defendant's theory is correct that the IRS credited payments in quarters other than the ones Defendant wanted the payments credited, Defendant has not shown that the IRS's actions were improper. He claims that they are, but he has not provided authority for the position that the IRS cannot shift tax payments.

13

(1:17CR507)

### D. Motion to Quash

The Government makes three arguments in support of its motion to quash: (1) Defendant failed to comply with federal regulations in seeking the subpoena[7] (ECF No. 32 at PageID #: 271-72); (2) Defendant failed to comply with the requirements of Criminal Rule 17(c) by requiring the individuals to appear at a conference, rather than a hearing, and failing to make a proper showing under *United States v. Nixon*, 418 U.S. 683 (1974) (*id.* at PageID #: 273-74); and (3) the subpoenas are unreasonable and oppressive (*id.* at PageID #: 274-75).

As to the requests that the three individuals testify at the Final Pretrial Conference, the motion is moot. The Conference has occurred, and the Defendant did not offer testimony on any of his motions.

As to the documentary requests, Defendant has not made a sufficient showing to permit a pre-trial subpoena for the production of documents.

In *Nixon*, the United States Supreme Court established a four-factor test a parting seeking a pre-trial subpoena *duces tecum* must meet. They are as follows: (1) the documents are evidentiary and relevant; (2) the documents are not otherwise procurable reasonably in advance of trial through due diligence; (3) the party cannot properly prepare for trial without the production and inspection of the documents in advance of trial, and the failure to inspect the documents may unreasonably delay the trial; and (4) the request is made in good faith, rather than as a fishing expedition. *Id.* at 699-700.

---

[7] During the Final Pretrial Conference, the Government indicated that it was withdrawing this argument as to the IRS individuals.

14

(1:17CR507)

Defendant references his discovery requests in his opposition the Government's motion, but a subpoena *duces tecum* under Rule 17(c) must be more than a "device[] for obtaining discovery." United States v. Skeddle, 178 F.R.D. 167, 170 (N.D.Ohio 1996) (Carr, J); *see also* United States v. Farmer, No. 1:14CR362, 2015 WL 1417965, at *3 (N.D.Ohio Mar. 31, 2015) (Lioi, J.) ("A proponent's motion, based on nothing more than a belief as to the requested documents' contents or import, is essentially a discovery request and is not properly made under Rule 17(c)."). By referencing his discovery requests (*see* ECF No. 35 at PageID #: 340), Defendant seems to suggest that the subpoenas are a backdoor into discovering that which he has not received through the Government's Rule 16 production of discovery. The subpoenas themselves confirm the inference. The subpoena to Adele Heard, for instance, merely regurgitates discovery requests 4, 5, 6, 7, and 11. *Cf.* ECF No. 36 at Page ID #: 343 *with* ECF No. 20 at PageID #: 96.

Also, Defendant cannot show that the documents are not otherwise procurable. He argues that he "previously filed a FOIA request to obtain the IRS' file, but the IRS only produced 1,858 pages of material out of the 1,918 possessed by the IRS." ECF No. 35 at PageID #: 340. He fails to tell the Court why the IRS did not produce the 60 pages withheld. If, for example, the IRS withheld the 60 pages due to privilege, a subpoena will not prove fruitful.

That the IRS responded to Defendant's FOIA request by producing all but 60 pages of close to two thousand pages suggests that the IRS has provided what it is required, and a subpoena is unnecessary. *Cf. Farmer*, 2015 WL 1417965, at *3 (holding that criminal defendant

(1:17CR507)

did not satisfy *Nixon's* "otherwise reasonably procurable" prong when the defendant had the opportunity to file a FOIA request to obtain documents).

### III. Conclusion

For the foregoing reasons, Defendant's motion to compel and motion to disclose grand jury transcripts are denied. Defendant's motion to dismiss the indictment is granted as to the part of Count 8 alleged to have occurred prior to the statute of limitations. Otherwise, it is denied. The Government's motion to quash is granted as to the requests for production of documents and denied as moot as to the requests for testimony. The parties shall consult and inform the Court by 12:00 p.m. Noon on May 23, 2018, if they can agree on how the Indictment can be conformed to the ruling or if the Government will pursue a superseding Indictment.

IT IS SO ORDERED.

| | |
|---|---|
| May 18, 2018 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |